Simon Miller
Rebecca Avrutin Foley
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- x

SETH GERSZBERG and EGRHC, LLC,

                Plaintiffs,

    -against-

ICONIX BRAND GROUP, INC., IP HOLDINGS
UNLTD, LLC and NEIL COLE,

                Defendants.

-------------------------------------- x

C.A. No. 17-cv-08421 (KBF)(RWL)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION OF THIS COURT'S MAY 7, 2018 DECISION**

BLANK ROME, LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Defendants*

Defendants Iconix Brand Group, Inc. ("Iconix"), IP Holdings Unltd. ("IPHU"), and Neil Cole ("Cole") respectfully submit this memorandum in opposition to Plaintiffs Seth Gerzsberg and EGRHC, LLC's motion for reconsideration of this Court May 7, 2018 Decision (the "May 7, 2018 Decision") dismissing, in part, the Complaint, dated November 1, 2018 (the "Complaint"). Plaintiffs' motion for reconsideration should be denied in its entirety. Rather than identifying matters which the Court overlooked, Plaintiffs seek to reassert the same arguments made in the underlying motion or, worse, to assert new arguments they neglected to make the first time around.

A motion to reconsider a Court's prior decision or order is governed by Local Rule 6.3 of the Local Civil Rules of the Southern and Eastern Districts of New York ("Local Rule 6.3"). Local Rule 6.3 states that a party seeking reconsideration shall provide the Court with a "memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." As stated by the Second Circuit, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (citations omitted); *Massop v. U.S. Postal Service*, 493 Fed.Appx. 231, 232 (2d Cir. 2012). Reconsideration of a court's prior order under Local Rule 6.3 or Rule 59 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (citations omitted). Defendants respectfully submit that Plaintiffs' motion comes nowhere near meeting that exacting standard.

1

Dismissal of Claim I (Breach of Fiduciary Duty) and Claim IV (Breach of the IPHU Operating Agreement

Plaintiffs' first argument is that this Court should reconsider its decision to dismiss the breach of fiduciary duty claim (Claim I) and the breach of the IPHU Operating Agreement claim (Claim IV) because, Plaintiffs assert, the "carve out" in the Buyout Agreement's broad release for matters "relating to the MEE License Agreement" should be applied to preserve Claim I and Claim IV at least as they "relate" to the MEE License Agreement. This is a flawed argument for several reasons.

First, Plaintiffs fail to identify anything which this Court purportedly "overlooked." Certainly, this Court did not overlook the carve-out language in the Buyout Agreement release referring to the MEE License Agreement. To the contrary, in the May 7, 2018 Decision, the Court expressly considered the application of the carve-out language to each of the claims in the Complaint. May 7, 2018 Decision, pp. 12-13. Indeed, the Court addressed the very argument which Plaintiffs press here. This Court noted as follows:

> Plaintiffs counter that their claims are carved out from the release by virtue of the exception for the MEE License Agreement. According to this argument, because all of plaintiffs' claims—and indeed the parties' entire relationship—relate to the MEE License Agreement, none could have been released. But if this were correct, the release would have no effect in practice, and surely that was not the parties' intent.[1] The parties unambiguously intended a set of claims to have been released at the time of signing.

May 7, 2018 Decision, p. 12. The Court's analysis continued to differentiate between the contractual relationship embodied in the MEE License Agreement ("an agreement that stands alone—with independent rights and obligation between the parties") and claims arising from the

---

[1] In their motion for reconsideration, Plaintiffs attempt to assert a different intent for the carve-out language. May 14, 2018 Letter memorandum (ECF 32), p. 3. Absent from the assertion, however, is any citation to an allegation in the Complaint. Moreover, Plaintiffs' disagreement with the Court's interpretation of the parties' intent which was derived from the explicit language in the Buyout Agreement is not a proper basis for seeking reconsideration.

2

IPHU Operating Agreement or relating to the extent of Defendants' fiduciary duties. *Id.* at 13. The Court's analysis of the carve-out led it to sustain a part of Plaintiffs' fraudulent inducement claim (Claim II) as it pertained to the Fourth Amendment to the MEE License Agreement.[2] It is clear that Plaintiffs simply disagree with the Court's interpretation and analysis of the Buyout Agreement's release language. This is not a proper basis for a reconsideration motion.

Second, Plaintiffs fail to show that reconsideration of the issues they re-raise would yield a different result. *See Shrader*, 70 F.3d at 257. In particular, while the Court relied on the existence of the Buyout Agreement's release to dismiss Claims I and IV, Defendants identified several deficiencies in Claims I and IV which, regardless of the existence or application of the release, warranted dismissal of those claims as a matter of law. *See* Defendants' Memorandum of Law, dated December 15, 2017 (ECF 17), Point II-B,C,D, pp. 11-16; Point III, p. 16 and Defendants' Reply Memorandum of Law, dated March 2, 2018 (ECF 24). Since Plaintiffs make no effort to address the many additional arguments for dismissal of Claims I and IV advanced by Defendants, none of which are dependent on the existence of the release, they cannot demonstrate that granting reconsideration would alter the result in the May 7, 2018 Decision with respect to Claims I and IV.

Dismissal of Claim V (Unjust Enrichment)

Plaintiffs argue that this Court should reconsider its dismissal of their unjust enrichment claim (Claim V) as pled against Defendant Neil Cole. Specifically, Plaintiffs argue that the Court's finding that "they do not allege that Cole personally received any direct benefit," (May

---

[2] It is worth noting, as Defendants did in their papers on the underlying motion to dismiss, that neither Plaintiff was a party to the MEE License Agreement or, by extension, the Fourth Amendment thereto. Accordingly, the carve-out to the Buyout Agreement release should in no way limit the scope of the release as to Plaintiffs. Defendants respectfully submit that since neither Plaintiff was a party to the Fourth Amendment, neither party "entered into it" and, therefore, could not have been "induced," fraudulently or otherwise, to do so.

3

7, 2018 Decision, p. 20), overlooks Paragraph 89 of the Complaint which Plaintiffs assert alleges a direct benefit from Plaintiffs to Cole personally sufficient to survive a motion to dismiss. Plaintiffs are wrong.

As an initial matter, the release in the Buyout Agreement bars the unjust enrichment claim. While the Court noted that the unjust enrichment claim related to both the Buyout Agreement and the MEE License, as shown below, the damages which Plaintiffs allege relate only to the transaction in the Buyout Agreement. Complaint, ¶ 174. Although Defendant Cole is not a signatory to the Buyout Agreement in his personal capacity, the language of the Suchman Release in the Buyout Agreement covers him. Buyout Agreement, § 5.2 (releasing "the Iconix Parties and Affiliates of the Iconix Parties, and their respective shareholder, members, officers, owners, directors, partners, agents, representatives, employees, attorneys, predecessors, . . .").

Paragraph 89 of the Complaint is simply an allegation reciting what was alleged in a separate entirely unrelated lawsuit. It appears in a section of the Complaint under the heading "Iconix's Pattern and Practice of Fraudulent Accounting and Securities Fraud" which offers no connection to the Plaintiffs or their central allegations in the Complaint. Certainly, nothing in such section identifies any damages alleged to have been suffered by Plaintiffs. There is no allegation that the "benefit" alleged in Paragraph 89 came from Plaintiffs or at their expense. To the contrary, the allegation is that public shareholders of Iconix were harmed and Plaintiffs are not mentioned.

More to the point, under the heading Fifth Claim for Relief (Unjust Enrichment), Plaintiffs expressly allege the damages which they claim as part of their unjust enrichment claim. Thus, Paragraph 174 alleges as follows:

521949.00665/108699728v.1

>Defendants were enriched at the expense of Suchman and Plaintiffs, including by virtue of Defendants' acquisition in May 2013 of Suchman's entire 49% interest in IPHU and receipt of other benefits at an unfairly discounted price and without paying the full consideration promised therefor; their acquisition of the full value of the legacy receivables that they had intentionally failed to collect during the time Suchman was a 49% member of IPHU; and in other ways that are not presently known or quantifiable by Plaintiffs given Defendants' false and misleading statements and withholding of records and information over the years.

Complaint, ¶ 174. This allegation asserts no connection, direct or otherwise, with the allegation in Paragraph 89 of the Complaint and no such connection could be alleged. Similar to the fact that the series of allegations of Iconix's accounting practices have always been a transparent attempt to taint Iconix in the eyes of the Court, this reference to Paragraph 89 is nothing more than a belated "hail mary" to resurrect a properly dismissed claim.

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for reconsideration of the May 7, 2018 Decision in its entirety and grant Defendants such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 29, 2018

BLANK ROME, LLP

By: _____
Simon Miller
Rebecca Avrutin Foley
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
sjkmiller@blankrome.com

Attorneys for Defendants

5