UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9-12-18

3TAC, LLC and WEST LOOP SOUTH, LLC,

       Plaintiffs,

   -against-

ICONIX BRAND GROUP, INC., IP HOLDINGS
UNLTD., LLC and NEIL COLE,

       Defendants.

Case No.: 16-cv-08795 (KBF)(RWL)

------------------------------------------------------------X

SETH GERSZBERG and EGRHC, LLC,

       Plaintiffs,

   -against-

ICONIX BRAND GROUP, INC., IP HOLDINGS
UNLTD, LLC and NEIL COLE,

       Defendants.

Case No. 17-cv-08421 (KBF)(RWL)

**STIPULATION REGARDING
ESI PROTOCOL**

------------------------------------------------------------X

  This Stipulation is being entered into to facilitate the production, exchange and discovery of documents and information in electronic form also known as electronically stored information ("ESI").

I. **PARTIES' AGREED-TO TERMS**

  Plaintiffs 3TAC, LLC ("3TAC") and West Loop South, LLC ("West Loop") in the action styled *3TAC, LLC, et al. v. Iconix Brand Group, Inc., et al.*, No. 16-cv-0875(KBF)(RWL), and Plaintiffs Seth Gerszberg ("Gerszberg") and EGRHC, LLC ("EGRHC") in the action styled *Gerszberg, et al. v. Iconix Brand Group, Inc., et al.*, No. 17-cv-08421(KBF)(RWL) (collectively,

"Plaintiffs") and Defendants Iconix Brand Group, Inc. ("Iconix"), IP Holdings Unltd., LLC ("IPHU") and Neil Cole ("Cole") (collectively, "Defendants") (Plaintiffs and Defendants collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "Discovery Plan").

A. SCOPE

1. This Discovery Plan shall govern the production of ESI.

a) "ESI" for purposes of this Discovery Plan shall include, but not be limited to:

(a) Digital Communications (e.g., e-mail, voicemail, instant messaging);

(b) E-mail Server Stores (e.g., Gmail, Lotus Domino .NSF and Microsoft Exchange .EDB);

(c) Word Processed Documents (e.g., Word and WordPerfect files and drafts);

(d) Spreadsheets and tables (e.g., Excel and Lotus 123 worksheets);

(e) Collaboration software tools (e.g., Microsoft SharePoint, Microsoft Lync, eRoom);

(f) Document Management Systems (e.g., Documentum);

(g) Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

(h) Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

(i)  Sound Recordings (e.g., .WAV and .MP3 files);

(j)  Video and Animation (e.g., .AVI and .MOV files);

(k)  Databases (e.g., Access, Oracle, SQL Server data, SAP);

(l)  Contact and Relationship Management Data (e.g., Outlook ACT!);

(m) Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

(n)  Presentations (e.g., PowerPoint, Corel Presentations);

(o)  Project Management Application Data (e.g., Google Docs);

(p)  Task related data (e.g., Task lists from Outlook PST);

(q)  Computer Aided Design/Drawing Files; and

(r)  Apps (data from smartphone applications used in the normal course of business).[1]

2.  Nothing in this Discovery Plan shall supersede the provisions of the Agreed Protective Order so-ordered by the Court on November 14, 2017 and entered into by the Parties on November 9, 2017, or any subsequent protective order.

3.  E-discovery will be limited to ESI in the Parties' custody, possession, or control created on or after the date identified in each discovery demand subject to the written objections, if any, of the Parties.

**B.  SEARCHING**

1.  <u>Search Protocol</u>.  Each Party shall be responsible for generating a search

---

[1] This list does not represent that such ESI exists within the Parties' data sources or that it will be produced. The Parties agree to meet and confer regarding any disputes as to relevancy, proportionality, or production issues.

protocol that it believes in good faith will return a reasonably high proportion of documents responsive to the other Party's discovery requests. Each Party shall disclose its above-described search protocol to the opposing Party. The Parties agree to work together with respect to reasonable modifications or additions to search methods.

2. <u>Search Terms</u>. On or before September 7, 2018, each of the Parties with an obligation to produce ESI (the "producing Party") shall furnish to counsel for the Party that has demanded the discovery (the "receiving Party") proposed search terms, custodians and strategies that the producing Party proposes to use to identify responsive ESI. On September 27, 2018, counsel for the receiving Party and producing Party will meet and confer to agree on search terms and custodians. In the event that a Party contends that any of the search terms are overbroad, the Parties shall meet and confer in good faith to narrow the terms. The Parties recognize that it may be necessary to modify proposed search terms, whether submitted by the receiving Party or producing Party, after the producing party reviews its search term hit reports if, for example, the terms generate a large amount of irrelevant and/or false positive results, and the Parties agree to cooperate in good faith on such modifications.

3. <u>Inaccessible Data</u>. The following types of data stores are presumed to be inaccessible and are not subject to discovery absent a particularized need for the data as established by the facts and legal issues of the case: (a) deleted, slack, fragmented, or other data accessible only by forensics; (b) Random Access Memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (c) on-line access data such as temporary internet files, history, cache, cookies, and the like; (d) back-up data that is substantially duplicative of data that is more accessible elsewhere and/or that requires restoration before it can be fully accessed; (e) server, system or network logs; (f) data remaining from systems

4

no longer in use that is unintelligible on the systems in use; and (g) electronic data (e.g., email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), to the extent that a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage) and the alternative storage device is searched for ESI by the producing Party.

### C. PRODUCTION FORMAT

1. <u>Format</u>. All ESI that can be readily converted to TIFF documents shall be produced in TIFF format, Bates-stamped in a manner that does not alter the document. Color documents should be produced in JPEG format.[2] Where agreed, ESI will be produced in native format with Metadata intact, except where this is not practicable. In addition, if so requested by the receiving Party, the production shall include a text file and a "load file" (such as, for example, a DAT file). Should any receiving Party wish a different format, he or it shall inform the producing Party of same.

> a) Excel (or other spreadsheet formats) will be produced in native format. Native Excel files that require redactions shall be produced as TIFF images.
>
> b) PowerPoint (or other presentation formats) will be produced in native format. Native PowerPoint presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. Color PowerPoint presentations requiring redactions shall be converted to color images.

---

[2] Single-page 300 dpi CCITT Group IV black and white TIFFs shall be provided. If required for legibility, color documents should be produced if possible, in single-page JPG format.

  c) Media will be produced in native format.

  d) Database files will be produced in native format.

  e) The receiving Party may request a specific document or a specific category of documents produced as a TIFF document to be produced in native format upon good cause shown. The Parties agree to meet and confer as to any dispute before the issue is submitted to the Court.

  f) If a document is converted from native format to any other format, the producing Party shall extract and produce the agreed-upon metadata, from the original native file, and provide the hash value for the original file.

  g) If the requesting Party deems the alternate format to be insufficient, this will be brought to the attention of the producing Party, and the Parties will meet and confer before submitting the issue to the Court.

**D. PRODUCTION SPECIFICATIONS**

  1. <u>Native Productions</u>. All native productions shall be produced in such a way so as to identify and/or maintain the file structure of the data being produced. This shall be accomplished by providing a load file identifying the agreed upon metadata. Said load files shall be consistent with industry standard Relativity load files. If documents that the parties have agreed to produce in native format per this protocol are to be used at depositions or attached to pleadings or papers filed with the Court, the Party offering the native document must identify the document as native format and provide the slip sheet provided by the producing Party for each native file including Bates stamp, Protective Order designation, as appropriate, and agreed-upon metadata fields for authentication purposes. A slip sheet shall be produced for all native files at the time of their production, including Bates stamp, Protective Order designation, and agreed-upon metadata

fields. The Parties shall meet and confer regarding which metadata fields should be included on the slip sheet.

   2.   <u>Physical Documents</u>. Documents or records that either (i) were originally generated as ESI but now exist only in physical hard-copy format, or (ii) documents or records that were originally generated in hard-copy format, shall be produced as single page TIFF files along with an OCR acquired text file containing page break indications where available and the agreed-upon metadata. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing," "auto-rotation" and the like should be turned on when documents are run through the process. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Parent-child relationships (the association between attachments and their parent documents) shall be preserved. In the case of an organized compilation of separate documents (e.g., a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). The Parties agree to meet and confer as to any dispute before the issue is submitted to the Court.

   3.   <u>ESI</u>. For ESI produced as TIFF images, native format files shall be converted to single-page TIFF images. Accompanying the TIFF images shall be a multipage text (.TXT) file containing searchable text from the native file, and the agreed-upon metadata. Load files for the TIFF images should be created and produced together with their associated TIFF

images to facilitate the use of the produced images by a document management or litigation support database system.

      4.    <u>De-Duplication</u>.  The Parties will de-duplicate electronically across identical copies of collected documents, as opposed to within a source, to the extent reasonably possible.  De-duplication will be done on an exact-duplicate, rather than a near-duplicate basis.  Email attachments are not de-duplicated against attachments in other email families or loose electronic documents, unless the entire family, including the parent items, are identified as duplicates  Upon request and a showing of need, documents that are exact duplicates of documents not produced will be provided to the receiving Party in the form of a master custodian field that reveals custodians or sources of such documents and available and existing metadata the Parties have agreed to produce.  Hardcopy documents shall not be eliminated as duplicates of responsive ESI.

      5.    <u>System Files</u>.  Electronic file collection will be "De-NISTed", removing commercially available operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list.  Identification of NIST list matches will be through MD5 Hash values.

      6.    <u>Time Zone</u>.  When processing ESI, Coordinated Universal Time (UTC) should be selected as the time zone.

      7.    <u>Archive File Types</u>.  Archive file types (e.g., .zip) shall be uncompressed for processing.  Each file contained within an archive shall be produced, and the reference to the parent archive file will be provided in the child file name.  If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

8. <u>Production Media</u>. Documents shall be produced on CD-ROM, DVD, external hard drive, or electronically via secure file share/FTP.

9. <u>Electronic Text Files</u>. For each document, a single text file shall be provided along with the native or image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text shall be extracted directly from the native electronic file unless the document was redacted, an image file, or physical file. In these instances, a text file created using OCR will be produced in lieu of extracted text. Where feasible, if the producing Party has access to extract text from electronic document files, the receiving Party shall receive extracted text as well, instead of OCR text generated from an image file. If such conversion is unduly burdensome or renders the document unusable, the producing Party may produce the document in any reasonably usable form as may be agreed upon by the Parties. The Parties shall meet and confer regarding any disputes relating to the availability of extracted text.

10. <u>Metadata</u>. The following metadata fields shall be included in the load files, to the extent applicable:

- FIRSTBATES
- LASTBATES
- BEGATTACH
- ENDATTACH
- ATTACHMENTS
- CUSTODIAN
- DUPLICATE_CUSTODIANS
- DUPLICATE CUSTODIAN_SOURCEFILEPATHS (IN SEPARATE OVERLAY FILE)
- FROM
- TO
- CC
- BCC
- SUBJECT
- DATE_SENT
- DATE_RECEIVED

9

- FILENAME
- FILE_EXTEN
- AUTHOR
- DATE_CREATED
- DATE_MOD
- DATE_LASTACCESS
- LAST_PRINTED_DATE
- REDACTED (FLAG YES OR NO)
- FILE_SIZE
- RECORDTYPE
- FILEPATH
- INTMSGID
- HASH_VALUE
- TEXTLINK
- NATIVELINK
- PAGE_COUNT
- PROD_VOLUME
- TITLE
- CONVERSATION INDEX
- APPLICATIONNAME
- COMMENTS
- ERRORMSG (A SLIP SHEET AND METADATA FOR THESE FILES SHOULD STILL BE INCLUDED)
- HAS COMMENTS
- HASTRACKEDCHANGES
- HIDDENTEXT
- LASTAUTHOR
- REVISION
- SENSITIVITY
- SUSPECTEXT
- SUSPECTOLE
- TEMPLATE

Such metadata fields will be produced to the extent available, except that they may be suppressed or redacted if the file contains privileged information. The Parties agree to meet and confer if additional fields of metadata are needed.

   11. <u>Attachments</u>. Email attachments and embedded files will be mapped to their parent by attachment range within the load file.

### E. OBJECTIONS.

1.  Each Party reserves the right to object to production of specific documents in the format specified herein to the extent that production in such format is impracticable or unreasonably burdensome or expensive.

2.  Each Party reserves the right to request alternative formats or files for documents that are difficult to read after they have been produced as specified herein or requested hereafter or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol:

    a)  The receiving Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in the requested format.

    b)  Within fourteen (14) days of receiving this request, the producing Party will either (i) produce the requested files to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

    c)  If the Parties are unable to agree as to the production of the requested documents in the format requested, the Parties may submit the matter to the Court.

### F. PRIVILEGE AND WORK PRODUCT CLAIMS

1.  The Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine and/or any other applicable privilege, the producing Party will provide an updated summary log for each production of privileged material, in an electronically searchable format (e.g., Excel), containing, for each document claimed as privileged, and as required by Fed. R. Civ. P. 26(b)(5)(A), a description of the "nature of the documents, communications, or tangible things not produced or disclosed – and

do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

2. If the requesting Party requires further information, it shall explain in writing the need for such information, and identify the unique identifier for each document for which it seeks this information.

3. The inadvertent production of privileged or protected documents or information shall be governed by the Protective Order entered by the Court in this litigation.

G. **THIRD-PARTY ESI**

1. Any non-party subpoena issued by a Party (the "Issuing Party") will direct the non-party to produce ESI in accordance with the production format set forth in this Discovery Plan. In the event the non-party is unwilling to do so, however, the Issuing Party will be free to reach a good faith resolution with the non-party with respect to the format of the production of ESI.

2. The Issuing Party will promptly furnish to all other Parties any documents obtained by subpoena. Specifically, to the extent the Issuing Party receives hard-copy documents, the Issuing Party will forward copies of such documents to all other Parties upon receipt. Similarly, to the extent the Issuing Party receives ESI, the Issuing Party will copy such ESI immediately upon receipt and forward such copies to all other Parties.

H. **OTHER**

1. This Discovery Plan shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

2. Nothing in this Discovery Plan shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-

product doctrine, or any other applicable privilege or immunity. By entering into this Discovery Plan, the Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

3. Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

4. Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

Dated: August 30, 2018
New York, New York

**EPSTEIN OSTROVE, LLC**

*Attorneys for Plaintiffs*

By: /s/ *Elliot D. Ostrove*
    Elliot D. Ostrove
    200 Metroplex Drive, Suite 304
    Edison, New Jersey 08817
    and
    43 West 43rd Street, Suite 139
    New York, NY 10036-7424
    (646) 300-8600
    e.ostrove@epsteinostrove.com

**BLANK ROME LLP**

*Attorneys for Defendants*

By: /s/ *Deborah A. Skakel*
    Deborah A. Skakel
    Hannah K. Ahn
    Blank Rome LLP
    405 Lexington Avenue
    New York, NY 10174-0208
    (212) 885-5000
    dskakel@blankrome.com
    hkahn@blankrome.com

**SO ORDERED**

U.S.D.J. USMJ

9/12/18

**Robert W. Lehrburger
United States Magistrate Judge
Southern District of New York**